UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BISHOP PERRY,                                          Case No. 14-11891

               Plaintiff,                         Patrick J. Duggan
v.                                                              United States District Judge

TERRY SANDERS,                                    Michael Hluchaniuk
                                                                United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Dkt. 18)**

## I.    PROCEDURAL HISTORY

Plaintiff, an inmate in the custody of the Michigan Department of
Corrections, brings this action under 42 U.S.C. § 1983, claiming a violation of his
civil rights under the United States Constitution.  (Dkt. 1).[1]  Plaintiff alleges that
defendant, then a corrections officer at the facility where plaintiff was
incarcerated, took adverse action against him for engaging in conduct protected by
the First Amendment.  (Dkts. 1, 17).  On December 4, 2014, this case was referred
to the undersigned for all pretrial purposes by District Judge Patrick J. Duggan.
(Dkt. 15).

On January 6, 2015, defendant filed a motion for summary judgment

---

[1] Upon order of this Court, Plaintiff submitted a signed, verified complaint on December
22, 2014.  (Dkts. 16, 17).

pursuant to Fed.R.Civ.P. 56(a), arguing that plaintiff failed to (1) exhaust his administrative remedies pursuant to the PLRA, 42 U.S.C. §1997e; (2) properly establish a First Amendment retaliation claim; and (3) demonstrate that defendant violated clearly established statutory or constitutional rights and thus is not entitled to qualified immunity.  (Dkt. 18).

Plaintiff responded on May 5, 2015, arguing that his actions assisting another inmate with the grievance process constituted protected conduct under the First Amendment and that the defendant's threats and disciplinary action against plaintiff immediately thereafter sufficiently raises a question of fact for the jury as to whether an adverse action was taken against plaintiff.  (*Id.*)  Plaintiff further argues that defendant is not shielded from liability by qualified immunity because plaintiff's First Amendment right to be free from retaliation for filing an administrative grievance was clearly established such that a reasonable official would understand that what he was doing would violate that right. (*Id.*)

For the reasons that follow, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **DENIED**.

## II.   FACTUAL BACKGROUND

Plaintiff alleges that on September 17, 2013, while incarcerated in the G. Robert Cotton Correctional Facility ("JCF"), another prisoner (Holden-El) sought plaintiff's assistance in filing a grievance against defendant, a corrections officer

2

at JCF, for violation of MDOC regulations.  (Dkt. 17, ¶ 2).  Plaintiff alleges that

Holden-El expressed that he did not know how to meet the exhaustion

requirements of the PLRA and that, without plaintiff's assistance, he would not

have access to the courts.  (*Id*.)  According to the plaintiff and two other inmates,[2]

defendant approached plaintiff and Holden-El and threatened plaintiff with

disciplinary action if he continued to assist Holden-El.  (Dkts. 17, ¶ 3; 22, Ex. A,

C).  Plaintiff alleges that the following morning while he was at breakfast,

defendant conducted a search of his cell and reported finding dangerous

contraband therein.  (Dkt. 17, ¶ 4).  As he exited plaintiff's cell with a piece of

metal in his hand, defendant was allegedly overheard proclaiming that "this is

what happens when you [profanity] with me."  (Dkt. 22, Ex. A).

Plaintiff alleges that defendant was escorted from the JCF and his

employment from the MDOC terminated on September 20, 2013.  (Dkt. 17, ¶ 5).

Notwithstanding defendant's termination, and plaintiff's assertion that he had been

set-up by defendant, plaintiff was held in segregation for 30 days and lost his

privileges for 30 days beyond that.  (Dkt. 17; ¶¶ 6,7).

Upon his release from segregation, plaintiff followed all steps of the MDOC

grievance procedure, complaining that defendant retaliated against him for making

---

[2] JCF inmates Daniel Perry and Eric Scott provided affidavits in which they testify that
they each witnessed defendant threaten plaintiff with disciplinary action if he assisted Holden-El
with his grievance against defendant. (Dkt. 22).

3

verbal complaints to supervisory staff, filed false misconduct reports against him and had plaintiff placed in segregation.  (Dkt. 22, Ex. B).  Plaintiff's grievance was denied at all three steps. (Dkt. 22, Ex. B).

## III.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

Under 42 U.S.C. §1997e(a), a section of the Prison Litigation Reform Act (PLRA), a prisoner-plaintiff cannot bring a civil rights action challenging prison conditions without first exhausting all available administrative remedies.  42 U.S.C. § 1997e.  Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA.  *Rahim v. Holden,* 882 F.Supp.2d 638, 641 (D. Del. 2012).

Defendant argues that plaintiff failed to properly exhaust the administrative remedies available to him because the grievance he filed did not relate to the claim brought in this lawsuit.  Defendant contends that where the grievance notes the date of incident as December 4, 2013 and cites plaintiff's verbal complaints against defendant to supervisory staff as his protected conduct, the instant action

4

involves events that took place in September 2013 and is based on plaintiff's assistance to another prisoner.  (Dkt. 18).

Notwithstanding defendant's argument, "perfect overlap between the grievance and a...complaint is not required by the PLRA as long as there is a shared factual basis between the two." *Id.* (citing *Jackson v. Ivens*, 244 Fed.Appx. 508, 513 (3d Cir. 2007)).  Defendant correctly notes that the grievance's December incident date and the reference to verbal complaints to the supervisory staff as the act that prompted defendant's alleged retaliation is not necessarily consistent with the allegations of plaintiff's complaints.  Nevertheless, a shared factual basis does exist between plaintiff's perfected grievance and the complaint initiating this action.

First, although plaintiff notes December 4, 2013 as the date of incident, the text of his grievance reveals that the December date was merely the date he requested information regarding defendant from MDOC Internal Affairs.  The grievance goes on to detail that the information plaintiff sought in December related to the allegedly retaliatory discipline plaintiff was subjected to after events occurring on September 16 or 17.  The grievance clearly asserts the basis for plaintiff's allegations against defendant as the filing of knowingly false disciplinary reports against plaintiff and having him placed in administrative segregation.  Given the parallels between plaintiff's grievance and the allegations

5

in his complaint (reference to the defendant's retaliation against plaintiff by knowingly filing false misconduct charges, having plaintiff placed in administrative segregation and noting the date of defendant's alleged violation of plaintiff's First Amendment rights), the undersigned finds that there is sufficient factual overlap between plaintiff's filed grievance and his complaint in this action to find that plaintiff adequately exhausted his administrative remedies. *See e.g.* *Jackson*, 244 Fed. Appx. at 513 (shared factual basis between prisoner's grievance complaining of failure to properly diagnose and treat his medical condition and his § 1983 allegation of an Eighth Amendment violation due to delayed surgery was sufficient to adequately exhaust administrative remedies under the PLRA).

      B.    <u>First Amendment Retaliation Claim</u>

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The first step in plaintiff's retaliation claim is to determine whether he was engaged in protected conduct at all. *Id*. Absent protected conduct, plaintiff cannot establish a constitutional violation. *Id.*

> It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. See *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993). Rather, a "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court. *Id.*

*Thaddeus-X*, 175 F.3d at 395.  Accordingly, only if plaintiff's assistance was necessary to maintain Holden-El's right of access to the courts can plaintiff state a claim of retaliation.  *Id*.  The undersigned believes that the facts, as alleged both in plaintiff's complaint and in the affidavit provided by a third inmate who, with plaintiff, was assisting Holden-El,[3] make a showing sufficient to survive summary judgment on the claim that plaintiff was needed to adequately preserve Holden-El's access the courts.  *See id*.

Defendant argues that plaintiff failed to establish the second element of a retaliation claim; i.e., that an adverse action was taken against plaintiff that would

---

[3] The undersigned notes that plaintiff's brief cites to an affidavit from Holden-El, but actually provides an affidavit from Daniel Perry, a third inmate who testifies to helping Holden-El along with plaintiff.  Despite the misdirection, the undersigned sees no reason to reject a third-party's assessment of Holden-El's need for assistance as an alternative to the self-professed inability of the inmate receiving assistance, which courts have accepted as sufficient to sustain a jailhouse lawyer's first amendment retaliation claim.  *See id*.  Regardless of the source, an opinion of a person's ability to preserve his or her access to the courts is inherently at least somewhat subjective; although the inmate receiving assistance may have a greater understanding of his own abilities, a third party may be more impartial in her assessment of those abilities. Hence, there is seemingly no basis to prefer the opinion of the inmate receiving assistance over that of a third person with knowledge of the situation.

7

deter a person of ordinary firmness from continuing to engage in the protected conduct. *See id*. On this second element, "the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage." *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 503 (6th Cir. 2011) (quoting *Siggers–El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Even the mere potential threat of disciplinary sanctions is a sufficiently adverse action to support a claim of retaliation. *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004). Accordingly, plaintiff's allegations that defendant's retaliatory actions resulted in actual disciplinary sanctions (administrative segregation for thirty days and a loss of privileges for an additional thirty days) have established the second element of a retaliation claim sufficiently to avoid summary judgment.

Finally, defendant argues that plaintiff has failed to establish the causation element of his retaliation claim against defendant. "The third element of the retaliation standard requires a showing that 'there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Reynolds-Bey,* 428 Fed. Appx. at 504 (quoting *Thaddeus X*, 175 F.3d at 394).

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If

8

> the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment....Where a plaintiff sets forth "specific, nonconclusory allegations" of retaliation that could support a jury verdict at trial, the defendant cannot carry his or her burden at summary judgment by offering mere "summary denials."

*Reynolds-Bey*, 428 Fed. Appx. at 505 (quoting *Thaddeus X*, 175 F.3d at 399).

A defendant's own affidavit denying retaliatory motive and stating that he was merely performing his job duties, such as the one advanced by defendant here (Dkt. 18, Ex.1), is exactly the type of summary denial courts have routinely rejected as a basis for summary judgment on the causation element. *See Reynolds-Bey*, 428 Fed. Appx. at 505; *Thaddeus X*, 175 F.3d at 384, 399-400. The allegations within plaintiff's verified complaint, together with the affidavits of two other inmates who testify to observing and overhearing defendant specifically threaten plaintiff as a result of plaintiff's assistance of Holden-El (Dkt. 22, Ex. A, C), are sufficient to defeat defendant's motion for summary judgment.[4]

As noted by defendant, courts in this district and others have held that "a finding of guilt *based upon some evidence* of violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662

---

[4] This is especially appropriate given the Sixth Circuit holding that a pro se plaintiff's complaint should only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nali v. Ekman*, 355 Fed. Appx. 909, 911 (6th Cir. 2009) (quoting *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)).

(6th Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)

(emphasis added). Although plaintiff concedes in his complaint that he was

"declared" guilty of misconduct by MDOC Hearing Division personnel (Dkt. 17,

¶ 6), the record contains no evidence (outside of defendant's conclusory

allegations) of plaintiff's violation of prison rules. Absent some evidence of

plaintiff's having violated prison rules, especially in light of other evidence of

retaliation adduced by plaintiff, the undersigned does not believe summary

judgment is appropriate. *See  Moore v. Plaster*, 266 F.3d 928, 932 (8th Cir. 2001)

(where record lacks any evidence that disciplinary action was warranted, a finding

of guilt on misconduct charges is not fatal to plaintiff's retaliation claim).

      C.    <u>Qualified Immunity</u>

Defendant argues that even if plaintiff has adequately established a first

amendment retaliation claim, summary judgment in his favor is appropriate

because he is entitled to qualified immunity. Qualified immunity is an affirmative

defense that shields government officials "from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court

has set out "a two-step sequence for resolving government officials' qualified

immunity claims" and courts may consider the steps in any order. *Pearson v.*

*Callahan*, 555 U.S. 223, 232, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Thus, a court must decide whether the facts, as the plaintiff has alleged, make out a violation of a constitutional right and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Patrizi v. Huff*, 690 F.3d 459, 463 (6th Cir. 2012).

As discussed more thoroughly in Section B of this Report and Recommendation, if viewed in a light most favorable to plaintiff, the facts set forth in plaintiff's complaint and supporting affidavits set forth a valid claim for a violation of plaintiff's First Amendment rights. This step of the analysis is thus resolved against a finding of qualified immunity. *See e.g.*, *Sigley v. City of Parma Heights,* 437 F.3d 527, 537 (6th Cir. 2006).

Further, as discussed thoroughly in *Scott v. Churchill*, the Sixth Circuit determined in 2004 that filing false misconduct charges against an inmate in retaliation for engaging in protected conduct violates the inmate's clearly established constitutional right, precluding qualified immunity for defendant prison guard. *Scott*, 377 F.3d at 571; *see also, Cale v. Johnson*, 861 F.2d 943, 948-51 (6th Cir. 1988). Notably, the Sixth Circuit in *Scott* determined that even if a false misconduct charge is sustained against an inmate, *Cale* still clearly established that the false issuance of a misconduct charge is unconstitutional retaliation obviating qualified immunity. *Scott*, 377 F.3d at 572 ("that [defendant]

11

did not do a particularly good job of framing [plaintiff] does not make his actions any less culpable, and events outside of his control (i.e., the hearing officer's ultimate determination) do not vitiate the "the danger of further loss of liberty" to which [defendant] subjected [plaintiff]").  Accordingly, because the right to be free from retaliatory falsified disciplinary charges was clearly established at the time of defendant's alleged misconduct, defendant is not entitled to qualified immunity.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment should be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

12

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).
The response must specifically address each issue raised in the objections, in the
same order, and labeled as "Response to Objection No. 1," "Response to Objection
No. 2," etc.  If the Court determines that any objections are without merit, it may
rule without awaiting the response.

Date: July 7, 2015                    s/Michael Hluchaniuk
                                      Michael Hluchaniuk
                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 7, 2015, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record, and I certify that I have mailed by United
States Postal Service the foregoing pleading to the following non-ECF
participant(s), at the following address(es): Bishop Perry #231579, EC Brooks
Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444.


                                      s/Durene Worth
                                      Acting in the absence of
                                      Tammy Hallwood,  Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov

13